## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **ROBERT BENNETT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO.** |
| | ) | |
| **v.** | ) | **1:16-cv-01330-WSD-JSA** |
| | ) | |
| **GENENTECH, INC.** | ) | |
| | ) | |
| **Defendant.** | ) | |

## PLAINTIFF ROBERT BENNETT'S BRIEF IN
## RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COMES NOW Robert Bennett ("Mr. Bennett" or "Plaintiff") by and through undersigned counsel, and submits the following Response to Defendant's Brief and Motion for Summary Judgment. Plaintiff bases his brief on the Pleadings, Plaintiff's Response to Defendant's Statement of Undisputed Facts, Plaintiff's Statement of Additional Material Facts (hereinafter "Plaintiff's SF"), and all evidence lawfully before this Court.

## I.  **INTRODUCTION**

Defendant has not complied with Local Rule 56 which requires that the parties must file as exhibits to their briefs "copies of those excerpts of depositions or other discovery materials that are referenced therein." Defendant has not filed excerpts of Plaintiff's deposition. Defendant filed the entire deposition even though its obligation to do so is characterized in as being "in addition to" its responsibility to file excerpts.

Further, in its Statement of Undisputed Facts (hereinafter "Defendant's SF"), Defendant states fact assertions taking the form of, for example, "Plaintiff believes" or "Mr. McCurren denies." Mr. Bennett points out these assertions of fact are only capable of being judged by this Court as asserting that a belief or denial has been made. No such asserted fact can be taken as an assertion that a fact underlying any belief, denial, etc., is true.

Plaintiff brings this lawsuit alleging Defendant violated the Americans with Disabilities Act, as Amended. 42 U.S.C. §§ 12101, et. seq., by denying reasonable accommodations, refusing to engage in a good-faith interactive process, and engaging in a pattern of harassment because of Mr. Bennett's actual and perceived disabilities; and by engaging in illegal retaliatory conduct.

## II.   <u>STATEMENT OF MATERIAL FACTS</u>

Mr. Bennett hereby incorporates his Responses to Defendant's Statement of Undisputed Facts, and his Statement of Additional Material ("Plaintiff's SF").

## III.   <u>ARGUMENT AND CITATION OF AUTHORITY</u>

### 1. STANDARD OF REVIEW

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is material if it is a legal element of the claim under the applicable substantive law, which might affect the outcome of the case. It is genuine if the record taken

as a whole could lead a rational trier of fact to find for the nonmoving party. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). In evaluating a Motion for Summary Judgment, the Court should construe the evidence in a light most favorable to the non-moving party. St. Paul Fire & Marine Ins. Co. v. ERA Oxford Realty Co. Greystone, LLC, 572 F.3d 893, 897 (11th Cir. 2009).

## 2. RESPONSES TO THE MOVANT'S ARGUMENTS

## A. THE FAILURE TO ACCOMMODATE CLAIMS ARE NOT BARRED.

Defendant's assertion that Mr. Bennett's failure to accommodate claims are barred is unsupported by law.  Mr. Bennett agrees that, prior to filing an action in court for discrimination or retaliation, a plaintiff must file a charge with the EEOC within 180 days of when the violation occurred.  Plaintiff is wrong in saying that Mr. Bennett did not timely file an EEOC charge with respect to his failure to accommodate claims[1].

The Eleventh Circuit is "extremely reluctant" to bar claims based on procedural technicalities and will allow claims that "amplify, clarify, or more clearly focus" EEOC complaint allegations.  Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1279 (11th Cir. 2004).  A plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.  Id. at 1280. To determine whether a complaint falls within this scope, a court must ask if the complaint is "like or related to, or grew out of, the allegations contained in his EEOC charge." Id.

---

[1] Def. Brief at 5.

Defendant admits that, in his EEOC charge, Plaintiff alleged that he was denied a reasonable accommodation.[2]   Defendant then states that "Plaintiff now alleges that he requested other accommodations…"[3]   However, as part of Mr. Bennett's Charge of Discrimination, he presented a document that stated, *inter alia*, that he asked to be allowed to not ride in a Go-Kart type vehicle and that he sought permission to drive to meetings rather than fly[4].  Thus, Mr. Bennett's allegations are within the scope of the charge.  Even if they were not, he has satisfied the criteria used to determine if claims which were not previously alleged in an EEOC charge are to be considered "within the scope" of the charge. Defendant admits that Mr. Bennett made a failure to accommodate allegation in his charge, and the allegations Defendant now contests are obviously "like or reasonably related" to the admittedly timely charge. (See Turner v. Orr, 804 F.2d 1223, 1226).  Mr. Bennett's allegations "could reasonably be expected to grow out of" the investigation of the EEOC charges. See Id.; Baker v. Buckeye Cellulose Corp., 856 F.2d 167, 169 (11th Cir.1988).

## B. MATERIAL ISSUES OF FACT EXIST REGARDING PLAINTIFF'S ADA DISCRIMINATION CLAIMS.

The ADA provides that no covered employer "shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to…discharge of employees" and any of the "terms, conditions, and privileges of

---

[2] Def. Brief at 5.
[3] Id.
[4] Plaintiff's SF ¶ 245.

4

employment." 42 U.S.C. § 12112(a) (2007). To state a discrimination claim under the ADA, a plaintiff must allege sufficient facts to plausibly suggest "(1) that he suffers from a disability, (2) that he is a qualified individual, and (3) that a 'covered entity' discriminated against him on account of his disability." Surtain v. Hamlin Terrace Found., 789 F.3d 1239 (11th Cir., 2015).

### 1. Plaintiff has a Disability.

Mr. Bennett need not establish this prong of his *prima facie* case, as Defendant admits as much[5]. However, it is important to describe the nature of Mr. Bennett's disabilities because the they inure to the nature of the harassment as well as other issues set forth below.

The ADA defines "disability" to include: "[A] physical or mental impairment that substantially limits one or more of the major life activities of such individual[.]" Surtain 789 F.3d at 1246 (citing 42 U.S.C. § 12102(2), 29 C.F.R. § 1630.2(g)). Major life activities include, but are not limited to: caring for oneself, sleeping, walking, standing, bending, speaking, concentrating, thinking, communicating, and working. 42 U.S.C. 12102(2)(A).

Defendant admits that Mr. Bennett was limited in major life activities. Specifically, Defendant admits that Plaintiff was limited in his ability to stand and walk.[6] Defendant also shows that Plaintiff was limited in his ability to concentrate, think, and communicate.[7]

---

[5] Def. Brief at 7. "For purposes of this Motion, Genentech does not dispute that Plaintiff has a disability or that Plaintiff was a qualified individual."
[6] Def. Brief at 8. "While he was still using crutches."
[7] Def. Brief at 22. "Plaintiff appeared distracted."

Evidence of this can be found in records created as part of Defendant's internal investigation. Defendant's investigatory documents make it clear that Defendant was aware that Mr. Bennett was suffering from a limitation in this regard[8]:

- "[Rob] could not answer – he was talking in what seemed random terms."
- "[Rob] has been preoccupied with his health."
- "[Rob] is in another world."
- "[Rob] seem[ed] strange the whole meeting.  He didn't make sense."

### 2.  Plaintiff is a Qualified Individual

Defendant does not dispute that Mr. Bennett is a qualified individual under the ADA[9].

### 3.  Questions of Fact Exist in Regard to Mr. Bennett's Claim that Defendant Discriminated Against him by Failing to Engage in an Interactive Process

Defendant points out that it was required, *inter alia*, "to engage[] in the interactive process."[10]  It then states it "did so when it promptly granted the only accommodation Plaintiff specifically requested during his employment with Genentech, which allowed Plaintiff to utilize first-class airline travel."[11]  Mr. Bennett disputes the assertion.  More important, however, is that Defendant fails to show that it engaged in the interactive process.

In the Appendix to Part 1630 of Title 29 of the Code of Federal Regulations, the steps an employer should take when an employee seeks a reasonable accommodation are listed:

---

[8] Plaintiff's SF ¶ 247.
[9] Def. Brief at 7.  "For purposes of this Motion, Genentech does not dispute that Plaintiff has a disability or that Plaintiff was a qualified individual."
[10] Def. Brief at 8.
[11] Id.

1. Analyze the particular job involved and determine its purpose and essential functions;

2. Consult with the individual with a disability to ascertain the precise job-related limitations imposed by the individual's disability and how those limitations could be overcome with a reasonable accommodation;

3. In consultation with the individual to be accommodated, identify potential accommodations and assess the effectiveness each would have in enabling the individual to perform the essential functions of the position; and

4. Consider the preference of the individual…and select and implement the accommodation that is most appropriate for both the employee and the employer.

Clearly, the obligation to engage in the interactive is more complicated than simply granting one accommodation request. Yet that is the sole evidentiary fact Defendant has propounded in support of its assertion that it fulfilled its obligations.

Further, Defendant focusses solely on Mr. Bennett's disability as it relates to his ability to sit for long periods of time in an airline seat. Mr. Bennett's life activity impairments were not limited to standing or sitting. Indeed, Defendant's own investigative materials clearly indicate that Defendant and its employees were well aware that Mr. Bennett was limited in regard to, *inter alia*, concentrating, thinking, and communicating.

Mr. Bennett has presented evidence that he sought reasonable accommodations[12]. For example (and without limitation), Mr. Bennett has stated that he requested permission to drive for some business travel rather than flying and has stated that he requested to not be required to ride in a "Go Kart" type vehicle due to his disability. For each and every one of Mr. Bennett's requests, he asserts that Defendant failed to engage in the interactive process.

---

[12] Plaintiff's SF ¶ 233, 224, 225, 229, 230, 235, 236, 239, 245.

Defendant's position that it did so by granting one accommodation is simply insufficient.

### 4. Questions of Fact Exist in Regard to Mr. Bennett's Claim that Defendant Discriminated Against him by Denying Reasonable Accommodations

Defendant bases its argument regarding Mr. Bennett's reasonable accommodation claim on a position that Mr. Bennett was required to make a specific demand for an accommodation[13].  In support, Defendant cites, *inter alia*, Gaston v. Bellingrath Gardens & Home, Inc., 167 F.3d 1361, 1363 (11th Cir. 1999)[14].  However, Defendant wrongly suggests that a qualified person must make a specific demand for a **specific** accommodation.  The wording of the relevant Gaston holding is as follows:

> Accordingly, our holding…that the duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made, is binding precedent for purposes of defining the scope of the duty to provide a reasonable accommodation under the ADA

> Gaston, 167 F.3d at 1363.

> In the next paragraph, however, the court cites EEOC's interpretive guidelines:

> [I]n general ... it is the responsibility of the individual with a disability to inform the employer **that an accommodation is needed**.

> Id. at 1364 (citing 29 CFR. 1630 App. § 1630.9) (emphasis supplied).

> The full text of the paragraph cited by the court reads as follows:

> Employers are obligated to make reasonable accommodation only to the physical or mental limitations **resulting from the disability of an individual with a disability that is known to the employer. Thus, an employer would not be expected to accommodate disabilities of which it is unaware**.

---

[13] Pl. Brief at 7.
[14] Id.

29 CFR. 1630 App. § 1630.9 (emphasis supplied).

Thus, it is clear that the Gaston Court meant something very different than what the Defendant would have this Court believe.  Instead of putting the onus on an employee to request a specific accommodation (wheelchair access, changed working hours, etc.), Gaston requires the employee to make the employer aware that a disability exists.

The facts in the instant case are quite different from the facts in Gaston.  Whereas in that case the defendant employer did not know an accommodation was needed because they did not know of the plaintiff's disability, Defendant was well aware throughout the relevant portion of Mr. Bennett's employment that he was disabled and needed an accommodation.  Further, Mr. Bennett did specifically ask for an accommodation as evidenced by the fact that, as Defendant freely admits, it did provide the first-class accommodation to Mr. Bennett.

Defendant asserts that Mr. Bennett's alleged "failure to provide any additional evidence to show that he specifically requested other accommodations prevents him from establishing a failure to accommodate claim based on these alleged accommodation requests[15].  This can only be reached by accepting an incorrect interpretation of the law.

Defendant further contends, after admitting it provided an accommodation to Mr. Bennett, that it did not revoke the that accommodation.[16]  However, Defendant brings to light an email sent to Mr. Bennett from his manager.  In that email, Mr. McCurren states:

Please run any 1st class tickets by me. I know that I approved some flights for

---

[15] Pl. Brief at 7-8.
[16] Id. at 10.

you early on as your hip continued to re-hab[sic] but we need to talk about the recent flights as your hip continues to improve[17].

Defendant provides an interpretation of this email wherein it claims the message was "an effort to determine if the first-class airline travel accommodation remained reasonable in April 2012."[18]  This is, however, an **interpretation**.  Mr. Bennett interpreted this email to represent proof that his standing first class accommodation had been revoked[19].

Calling to mind the summary judgment, it is incumbent upon the Court to interpret the email in a light most favorable to Mr. Bennett.  Thus a question of material fact remains as to whether or not the first class accommodation was revoked.  In contrast to Defendant's position, Plaintiff presents evidence that Defendant was made aware of his disabilities in order to compel Defendant to provide an  accommodation[20].  Thus, taking all the presented evidence in the light most favorable to Mr. Bennett, questions of material fact exist as to whether Defendant discriminated against him by denying him reasonable accommodations.

### 5. Questions of Material Fact Exist in Regard to Mr. Bennett's Claim that Defendant Discriminated Against him Because of his Disability by Subjecting him to a Hostile Work Environment

While the Eleventh Circuit has not yet addressed the issue, several other circuits have concluded that the ADA provides a cognizable claim for a disability-based hostile work environment. See, e.g., Lanman v. Johnson Cty., 393 F.3d 1151, 1155 (10th Cir. 2004);

---

[17] Plaintiff's SF ¶ 224.
[18] Pl. Brief at 10.
[19] Plaintiff's SF ¶ 226.
[20] Plaintiff's SF ¶ 248.

Shaver v. Indep. Stave Co., 350 F.3d 716, 719 (8th Cir. 2003); Flowers v. S. Reg'l Physicians Servs., Inc., 247 F.3d 229, 235-36 (5th Cir. 2001).   Thus, while there is no caselaw interpreting the ADA to include hostile work environment protection, there is also no case law which says it does not do so.

Agreeing with Defendant, Mr. Bennett notes that, where a plaintiff presents a claim based on harassment by a supervisor, he must establish that: (1) he belongs to a protected group; (2) he has been subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and, thus, creates a discriminatorily abusive work environment; and (5) the employer is responsible for that environment under a theory of either direct or vicarious liability.   Gilliard v. Ga. Dep't of Corr. (11th Cir., 2012).

> A. Questions of Fact Exist as to Whether Comments and Actions Directed at Mr. Bennett concerned his Disability or any other Protected Characteristics.

In its argument to this point, Defendant admits that "Many of the comments and actions Plaintiff alleges were unrelated to Plaintiff's alleged disability[.][21]" Setting aside for the moment whether this is true, Defendant has admitted that at least some of the comments and actions alleged by Mr. Bennett were related to his disability.   Thus, by this admission, Mr. Bennett has satisfied this prong of the test for establishing a hostile work environment.

Regarding some of the statements Defendant argues did not concern his disability,

---

[21] Pl. Brief at 11.

the argument fails because Defendant asks the Court to take a leap of interpretation in its favor, when the summary judgment standard clearly dictates the opposite.  For example, Defendant would have the court believe that a statement made to Mr. Bennett that he should "get a better doctor" is unrelated to his disability.  Another example involved Mr. Bennett being told that he should "suck it up" and work[22].  One wonders what the 'it' in the statement could refer to if not Mr. Bennett's disabilities.  Mr. Bennett has presented evidence of these statements[23].  Also, documents produced by Defendant evidence a conclusion that such comments were made.  For example, in the interview of Tim Hassett (who reported to Mr. McCurren), the following is noted:

> Can't recall any comments about any comments[sic] or making fun of physical limitations[24].

Yet, on the next line of the interview, Ms. James-Ishibashi records this:

> Any comments are never initiated by management[25].

As evidence must be interpreted in the light most favorable to Mr. Bennett, it is appropriate for this contradiction to be interpreted to mean that Mr. Hassett is trying to shield management.  Further, in the interview with Greg Tutko, the following is noted:

> Any discussions about Rob's physical limitations? People joked around – it's a close knit group.  They spend a lot of time together.  Nothing malicious.  Greg

---

[22] Defendant describes this and other utterances as "general comments." Given that Defendant is comfortable labeling such comments as 'general,' it becomes clear that evidence indicates a severe and pervasive environment at Defendant's workplace.
[23] Plaintiff's SF ¶¶ 232, 221.
[24] Plaintiff's SF ¶ 249.
[25] Plaintiff's SF ¶ 250.

thinks jokes have been made at Rob and everyone – nothing mean-hearted[26].

Again, if this exchange is viewed in the light most favorable to Mr. Bennett, only one interpretation exists: discussions about Mr. Bennett's physical limitations did take place, and jokes were made at Mr. Bennett's expense.  Whether these were malicious is subject to interpretation.  Thus, it is proper that, at this stage, they be interpreted as being malicious.

B. Questions of Material Fact Exist as to Whether Comments and Actions Alleged by Mr. Bennett Were Severe and Pervasive

There is no "magic number" of instances of harassment that is necessary to meet the severe-or-pervasive standards.  See Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1276 (11th Cir. 2002).  This must be born in mind when considering the Defendant's assertion that Plaintiff only identified "nine occasions during four years of employment which he believes he was the subject of allegedly harassing comments and actions[.]"[27]

With respect to the fourth prong of the hostile work environment test, the harassment must be both subjectively and objectively severe or pervasive, Wilcox v. Corr. Corp., No. 14-11258 (11th Cir., 2015) (citing Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 809 (11th Cir. 2010) (en banc) (quoting Mendoza, 195 F.3d at 1245))[28].

Harassment is subjectively severe and pervasive if the complaining employee perceives the harassment as severe and pervasive, and harassment is objectively severe and

---

[26] Plaintiff's SF ¶ 251.
[27] Pl. Brief at 13.
[28] While Wilcox is unpublished, it is cited here because of its use of relevant case law.

pervasive if a reasonable person in the plaintiff's position would adjudge the harassment severe and pervasive. Id. (citing Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 509 (11th Cir. 2000)).  In evaluating whether harassment is objectively severe or pervasive, the Court should consider its frequency; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's work performance. Id. (citing Hulsey v. Pride Rests., LLC, 367 F.3d 1238, 1247-48 (11th Cir. 2004).

Mr. Bennett considers the comments and actions he describes Defendant's employee subjecting him to as severe and pervasive.  Thus, he has satisfied the subjective standard.  In regard to the objective standard, it is important to distinguish the case cited by Defendant from the instant facts.  Defendant cites McCann v. Tillman 526 F.3d 1370, 1378–79 (11th Cir. 2008) for its holding that, as Defendant puts it "several instances of racially derogatory slurs, extending over a period of more than two years, did not constitute severe and pervasive harassment."[29]  However, in McCann the Court said the following:

> [T]he only term ever directed at McCann was "girl" and the term "boy" was used only once in front of her.  McCann does not allege that anyone else ever used racially derogatory speech towards her.  Although McCann heard of racial epithets being spoken…these were never directed at McCann, nor spoken in her presence.  Moreover, although McCann alleges that she was upset by this language, she has not demonstrated that the alleged environment interfered with her job performance.
>
> McCann, 526 F.3d at 1377.

---

[29] Pl. Brief at 14.

Thus, it is clear that <u>McCann</u> is entirely distinguishable from the instant facts. Unlike <u>McCann</u>, Mr. Bennett's claims do not involve one instance of abuse directed at him and an alleged pattern of abuse directed at others. Rather, Mr. Bennett's claims concern multiple hateful and harmful comments and actions that occurred regularly and that impacted his life and his ability to work. Defendant does not argue the non-existence of the comments and actions described by Mr. Bennett. Rather, it asserts a legal argument for why those comments and actions are not severe or pervasive. That argument fails.

C. Questions of Material Fact Exist as to Whether Defendant Took Appropriate Action to Prevent Harassment and Whether Mr. Bennett Failed to Avail Himself of the Procedures Available to Report Harassment.

Defendant relies on the defense established in <u>Burlington Industries, Inc v Ellerth</u>, 524 U.S. 742 (1998) and <u>Faragher v City of Boca Raton</u> 524 U.S. 775 (1998)[30]. (Hereinafter "the <u>Faragher</u>/<u>Ellerth</u> affirmative defense.") Initially, the <u>Faragher</u>/<u>Ellerth</u> affirmative defense is inapplicable to the instant case because the harassment involved a tangible employment action. <u>See Vance v. Ball State Univ.</u>, 133 S. Ct. 2434, 2441 (2013). Mr. Bennett was told by Mr. McCurren that his career would be "damaged" if he did not continue his work as is and without regard to Mr. Bennett's disability. <u>See also Terry v. Laurel Oaks Behavioral Health Ctr., Inc.</u> (M.D. Ala., 2014) (<u>citing</u> <u>Vance</u> at 2443).

Even assuming, *arguendo*, that the <u>Faragher</u>/<u>Ellerth</u> affirmative defense applies, Mr. Bennett would still prevail on his claim. That defense requires proof (a) that the employer

---

[30] Defendant does not use the term "<u>Faragher</u>/<u>Ellerth</u> defense."

exercised reasonable care to prevent and correct promptly any harassing behavior, **and** (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Terry, 1 F.Supp.3d at 1267.  For an employer to prevail on this defense, **both** elements must be satisfied, and the employer bears the burden of proof on both elements.  Id.

Mr. Bennett disputes that he unreasonably failed to take advantage of preventative or corrective opportunities provided by Defendant.[31]  Even if he did, however, the evidence shows a genuine question of material fact as to whether Defendant exercised reasonable care to prevent and correct promptly any harassing behavior.

Defendant asserts that "after Mr. Marino contacted Ms. James-Ishibashi regarding concerns with Plaintiff's erratic behavior and comments Plaintiff made to co-workers, Ms. James-Ishibashi contacted Plaintiff to discuss these concerns."[32]  Yet in a communication from Defendant's attorney to Brian Kent, EEOC investigator, she wrote the following:

> [W]e note that Tammy James-Ishibashi was initially contacted on May 2, 2013, by Russell Marino (Senior Area Manager), who was named by Mr. Bennett in the charge as the alleged harasser.  Mr. Marino requested that Ms. James-Ishibashi investigate any allegations made by Mr. Bennett.[33]

This contradiction gives rise to a question as to the purpose of the investigation.  As

---

[31] Evidence exists that Mr. Bennett's manager did not understand Defendant's harassment policy.  Ms. James-Ishibashi: "Russell [Marino] misunderstood HR's role in needing to reach out to Rob in order to find out if he had a complaint."  Plaintiff's SF ¶ 263.

[32] Pl. Brief at 17 (emphasis supplied).

[33] Plaintiff's SF ¶ 254.

shown, evidence exists which shows Defendant claiming the investigation was aimed at Mr. Bennett's allegations, but evidence also exists showing that the same investigation was primarily focused on Mr. Bennett's alleged "erratic behavior."

Evidence also exists that Defendant's investigation was not launched for the purpose of preventing and correcting harassing behavior.   For example, in the Defendant's investigative file, a trend exists showing that, in her interviews with witnesses, Ms. James-Ishibashi repeatedly inquired first about Mr. Bennett's 'erratic behavior' and only inquired as to Mr. Bennett's allegations as an afterthought.   In others, Ms. James-Ishibashi spends the bulk of her time discussing the alleged "erratic behavior" and only briefly touches on allegations of harassment.   Examples of this can be found in the interviews of multiple employees.[34] Also, as previously noted, evidence exists that at least some of the individuals interviewed were merely trying to shield management from liability.[35]

Defendant argues that:

> Given that Genentech thoroughly investigated Plaintiff's allegations, took steps to address Plaintiff's allegations, and Plaintiff did not subsequently make any further complaints, Genentech is entitled to summary judgment on Plaintiff's hostile work environment claims.[36]

Thus, if evidence exists that can be interpreted to undermine Defendant's claims as to the nature of its investigation, Defendant's argument fails.   Such evidence does exist and

---

[34] Plaintiff's SF ¶ 255.
[35] Plaintiff's SF ¶¶ 249, 250.
[36] Def. Brief at 18.

must be interpreted in the light most favorable to Mr. Bennett.  Accordingly, Defendant is not entitled to summary judgment on Mr. Bennett's hostile work environment claims.

## C. MATERIAL ISSUES OF FACT EXIST REGARDING PLAINTIFF'S ADA RETALIATION CLAIM.

The ADA prohibits retaliation against an individual for opposing an unlawful practice or making a charge under the ADA. 42 U.S.C. § 12203(a).  To prevail on his ADA retaliation claim, Mr. Bennett must show that: (1) he engaged in a statutorily protected expression, (2) he suffered an adverse employment action, and (3) there was a causal link between the two. Frazier-White v. Gee, 818 F.3d 1249, 1258 (11th Cir., 2016).  Once a *prima facie* case is established, the burden shifts to the employer to assert a legitimate non-discriminatory reasons for its actions.  Standard v. A.B.E.L. Services, Inc., 161 F.3d 1318, 1331 (11th Cir. 1998)  The plaintiff must then demonstrate that he will be able to establish at trial that the employer's proffered reasons are a pretextual ruse designed to mask retaliation." Id.

a. Plaintiff Engaged in Protected Activity

It is beyond dispute that Mr. Bennett engaged in protected activity.  The act of seeking an accommodation for his disability placed Mr. Bennett within the protected scope.  The first element may be met by a request for a reasonable accommodation.  Frazier-White, 818 F.3d at 1258 (citing Standard v. A.B.E.L. Servs. Inc., 161 F.3d 1318, 1328 (11th Cir.1998)). Additionally, Mr. Bennett engaged in protected activity by participating in the investigation into his allegations and by filing an EEOC Charge of discrimination.  Finally, Defendant's brief does not contain a dispute that Mr. Bennett engaged in legally protected activity.

18

b. <u>Mr. Bennett Suffered Adverse Employment Action</u>

Defendant makes an unusual argument in regard to whether Mr. Bennett suffered an adverse employment action.   Namely, Defendant omits the fact that it terminated Mr. Bennett.[37]  This odd omission leads to the inescapable conclusion that Mr. Bennett did suffer an adverse employment action: termination.   Based upon this alone, Mr. Bennett can establish this element of his *prima facie* case.

Going further, the Eleventh Circuit has not adopted a bright-line test for what kind of effect on the plaintiff's terms, conditions, or privileges of employment the alleged discrimination must have for it to be actionable.   <u>Davis v. Town of Lake Park Florida</u>, 245 F.3d 1232 (11th Cir., 2001) (<u>citing</u> <u>Gupta v. Florida Bd. Of Regents</u>, 212 F.3d at 586.  The standard for this analysis is laid out by the Eleventh Circuit in <u>Davis</u>:

> We therefore hold that, to prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a serious and material change in the terms, conditions, or privileges of employment. Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances.

> <u>Davis</u>, 245 F.3d at 1239.

Defendant argues that Mr. Bennett cannot satisfy the adverse action prong of his prima facie case because, *inter alia*, participation in the CIU Committee was "not a promotion, and would not have resulted in a change in job title, increased compensation, or

---

[37] Pl. Brief at 20-21.

any additional benefits."[38]

It is not correct for Defendant to assert that, had Mr. Bennett been placed on the CIU Committee as planned, such a change would have been immaterial.  Mr. Bennett was employed as an Asthma Field Reimbursement Manager[39].  In that position, he worked with field representatives on issues of reimbursement concerning the physicians seeing most of the patients relevant to Defendant's asthma medications[40].  The position Mr. Bennett occupied involved working with physicians on existing pharmaceuticals for those pharmaceuticals existing indications of use.  By contrast, the CIU transfer opportunity represented the opportunity to bring a drug into a new market[41].  Had Mr. Bennett been allowed to take the CIU transfer opportunity, the nature of his job would have changed in a way that is both material and tangible.  If nothing else, the transfer would have represented a change to the privileges of his job due to the nature of the product he would be working on and the physicians he would be working with.  It is implausible for Defendant to assert that a reasonable person working in the pharmaceutical industry would find the denial of such a transfer anything other than materially adverse.

The application of the standard for material adversity is not the same in retaliation cases as it is in substantive discrimination cases.  As Judge Story notes in <u>Stacey-Suggs v.</u>

---

[38] Def. Brief at 20.
[39] Plaintiff's SF ¶ 257.
[40] Plaintiff's SF ¶ 258.
[41] In March of 2014, Defendant announced that the FDA approved its drug Xolair for the treatment of chronic idiopathic urticaria (CIU).  Plaintiff's SF ¶ 259.

Bd. of Regents of the Univ. Sys. of Ga.:

> A plaintiff bringing a retaliation claim "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." [T]his standard is "decidedly more relaxed" than that used in discrimination cases.

> Stacey-Suggs v. Bd. of Regents of the Univ. Sys. of Ga. (N.D. Ga., 2014).

Accordingly, there exists a jury question in the instant case as to whether being denied a position on a prestigious committee aimed at launching a new drug to market would constitute a materially adverse action when looked at through the eyes of a reasonable worker in that field.  For all these reasons, material questions of fact exist as to whether or not Mr. Bennett suffered an adverse employment action.

c.  Plaintiff Can Establish a Causal Link Between his Protected Activity and Adverse Action he Experienced.

The standard for establishing the third prong of the *prima facie* case is quite low.  To establish a causal connection, a plaintiff must show that the relevant decisionmaker was aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated.  Shannon v. Bellsouth Telecomm., Inc., 292 F.3d 712, 716 (11th Cir. 2002)).  This circuit construes the causal link element broadly so that a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.  Goldsmith v. Bagby Elevator Co., Inc., 513 F.3d 1261 (11th Cir., 2008) (citing Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir.1998).  To establish that protected conduct and materially adverse actions were not wholly unrelated, a plaintiff must

show that the decisionmaker was aware of the protected conduct at the time of the action. Reeves v. DSI Sec. Serv. Inc. (11th Cir., 2010) (citing Goldsmith, 513 F.3d at 1278).

Defendants were aware of Mr. Bennett's protected conduct before his hip surgery occurred, as Mr. Bennett asked for an accommodation[42].  Defendant was aware of other protected activity on 9 May 2013 when Mr. Bennett participated in the investigation, and again in October of 2013 when it received Mr. Bennett's EEOC Charge of Discrimination[43].

A general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection.   Brungart v. Bellsouth Telecommunications, 231 F.3d 791 (11th Cir., 2000).  Mr. Bennett began participating in Defendant's investigation in early May of 2013[44].  Prior to then, and for a time after, Mr. Bennett had been included in the circulation of emails concerning the CIU Committee[45]. Mr. Bennett learned that someone else was appointed to the committee in late June of 2013[46].  Defendant does not contest that Mr. Bennett was not appointed to the Committee.

Thus, a period of less than two months elapsed between Defendants' being made aware of the protected activity (Mr. Bennett's participation in the internal investigation) and the appointment of someone other than Mr. Bennett to the CIU committee.    This close

---

[42] Plaintiff's SF ¶¶ 235, 237, 238.
[43] Plaintiff's SF ¶ 260.
[44] Plaintiff's SF ¶ 264.
[45] Plaintiff's SF ¶ 261.
[46] Plaintiff's SF ¶ 262.

temporal proximity alone gives rise to a jury question in regard to whether the actions complained of by Mr. Bennett are causally connected to his engaging in protected activity.

In regard to his termination, Defendant never informed Mr. Bennett that he was terminated until the instant lawsuit was filed.  Thus, it is impossible to verify the date of his termination.  Evidence exists, however, that Mr. Bennett was terminated prior to this date[47].  Thus, by concealing the date of his termination, Defendant has engaged in conduct which makes it impossible to gauge the temporal proximity between Mr. Bennett's protected activity and that adverse employment action.  As the evidence must be interpreted in Mr. Bennett's favor, the inference must be that the two are related.

d. <u>Mr. Bennett can Establish that Defendant's Proffered Reasons for Employment Actions Taken Against him were merely pretexts for retaliation.</u>

Before responding to Defendant's proffered reasons for its actions taken in regard to Mr. Bennett, it is critical to point out that Defendant has not validly proffered any reason whatsoever for terminating Mr. Bennett.  Local Rule 56 of this Court states, *inter alia*, that

The court will not consider any fact…(d) **set out only in the brief and not in the movant's statement of undisputed facts**.

LR 56 (emphasis supplied).

In the instant matter, Defendant states in its brief the following:

Plaintiff remained on leave for more than 18 months, and Genentech continued to pay, and provide benefits to, Plaintiff for the duration of his leave. Despite this extended period of leave, Plaintiff was never able to return to work or able to provide Genentech with a date on which he expected to be able to return to

---

[47] Plaintiff's SF ¶ 265.

work. Accordingly, Genentech terminated Plaintiff's employment[48].

This statement is the closest Defendant comes to stating that it terminated Mr. Bennett for a specific reason, and that is merely an interpretation based upon Defendant's use of the word 'accordingly.'  More important, however, is the fact that at no point in Defendant's Statement of Undisputed Facts is a reason proffered as to the termination.  Therefore, under Local Rule 56, this Court must not consider the proffered fact.

Prior to addressing the reasons Defendant claim as legitimate and nondiscriminatory, it is important to note evidence of animus Defendant holds toward Mr. Bennett.

Pursuant to an invitation by the EEOC, the parties met to engage in mediation[49].  At that time, both parties agreed to confidentiality in regard to mediation.  On the day of the mediation, Plaintiff's therapist received an email from someone going by the name "reality czech."[50]  The email included one line of text, saying, "Poor man.  So depressed."[51] Following the text was a series or links to websites with information about Mr. Bennett[52].

The timing of the email is suspicious.  Mr. Bennett asserts the timing indicates a person associated with Defendant's mediation team breached confidentiality and either revealed private information relating to Mr. Bennett to the sender of the email or sent the email themselves.  In any case, it indicates someone sent a message to Mr. Bennett's

---

[48] PL. Brief at 21.
[49] Plaintiff's SF ¶ 240.
[50] Plaintiff's SF ¶ 241.
[51] Plaintiff's SF ¶ 242.
[52] Plaintiff's SF ¶ 243.

therapist trying to assert that he was not actually in need of therapy. In other words, Mr. Bennett asserts that the sender held the opinion that he was being deceptive. This is a similar motive to an organization that considers an employee claiming disability to be "faking it."

This is an interpretation, and Mr. Bennett admits as much. If, however, a jury were to reach the same conclusion, they may also conclude that Defendant caused, directly or indirectly, the email to be sent. A jury could also conclude that doing so evidences animus on the part of Defendant. Such animus would certainly undercut the assertion by Defendant that its actions were legitimate and non-discriminatory.

Finally, as Defendant has proffered no reason for Mr. Bennett's termination, Mr. Bennett does not have to present an argument showing why any reason is merely pretext

## **CONCLUSION**

For the foregoing reasons, Mr. Bennett respectfully requests that Defendant's Motion for Summary Judgment be denied.

Respectfully submitted this 20th day of November, 2017.

_s/ Aubrey T. Villines, Jr._
Aubrey T. Villines, Jr.
Georgia Bar No.
2900 Chamblee-Tucker Road
Building 1
Atlanta, GA 30341
T: 770.455.1350
E: atvill7@msn.com
**Counsel for Plaintiff**

_s/ Jason L. Mitchell_
Jason L. Mitchell, Esq.
Georgia Bar No. 502711
Attorney for Plaintiff
Jason L. Mitchell & Associates, LLC
P.O. Box
Alpharetta, GA 30023
T: 321.331.0229
E: jmitchell@jlmlawyer.com
**Counsel for Plaintiff**